UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard A. TONRY,
Defendant-Appellant.

No. 86-3462.

United States Court of Appeals,
Fifth Circuit.

Feb. 10, 1988.

Richard A. Tonry, Chalmette, La., pro se.

Joe Giarrusso, Jr., John P. Volz, U.S. Atty., Peter G. Strasser, Daniel S. Linhardt and Curtis Collier, Asst. U.S. Attys., New Orleans, La., for the U.S.

Before GARZA, REAVLEY and DAVIS, Circuit Judges.

REAVLEY, Circuit Judge:

Richard Tonry appeals his convictions for conspiracy to violate, and two substantive violations of, the Travel Act. 18 U.S.C. §§ 371 & 1952. The state law basis incorporated to support the Travel Act convictions was La.Rev.Stat.Ann. § 14:73 (West 1986), the Louisiana Commercial Bribery Statute. Finding that the Louisiana statute does not reach bribery of non-Louisiana public officials, we vacate and acquit.

I.

Tonry's convictions arise out of his attempts to establish the game of Tri–Zacta Keno in bingo parlors on Indian Reservations. In July, 1984, Tonry and his partners began negotiations with Larry Burgess, Chairman of the Chitimacha Tribe. The Chitimacha is a recognized Indian Tribe, under the jurisdiction of the Bureau of Indian Affairs with a reservation near New Iberia, Louisiana. The position of Chairman is the equivalent of Chief, but is elected rather than hereditary. The Chitimacha Tribal Council had passed a resolution authorizing Burgess to negotiate a bingo management contract in his official capacity as Chairman.

In order to induce Burgess to sign the bingo contract, Tonry paid Burgess $25,000. The payment was made in New Orleans, not on the reservation. Additionally, Tonry agreed to pay Burgess $5,000 a month "salary" when the bingo operation began. The contract executed by Burgess and Tonry and his partners did not disclose the $25,000 payment or the $5,000 salary. To facilitate approval of the contract, Tonry and Burgess traveled from New Orleans to the Bureau of Indian Affairs in Washington, D.C.

Ultimately, one of Tonry's partners notified the United States Attorney's office of the arrangement. Both Tonry and Burgess were arrested as a result of the subse-

quent investigation. Burgess pleaded guilty to accepting a bribe and testified for the government. Tonry was convicted by a jury on all three counts.

## II.

The Travel Act forbids a person from traveling "in interstate or foreign commerce" with the intent to "otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952(a)(3). An "unlawful activity" in this case is "extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States." 18 U.S.C. § 1952(b)(2). Specifically, as alleged in the indictment, the government had to prove that Tonry traveled in interstate commerce with the intent to commit bribery in violation of the Louisiana Commercial Bribery Statute. La.Rev.Stat.Ann. § 14:73 (West 1986).

Louisiana has two bribery statutes. The Public Bribery Statute, La.Rev.Stat.Ann. § 14:118 (West 1986), forbids the bribery of public officials or employees.[1] Public officials are defined to mean any official of Louisiana or its political subdivisions.[2] The Commercial Bribery Statute forbids bribery of "any private agent, employee, or fiduciary."[3] Since Burgess is not an agent or employee of Louisiana, the Public Bribery Statute, as the government agrees, does not apply. Instead the issue is whether Burgess is a private fiduciary within the meaning of the Commercial Bribery Statute.

The government argues that the two bribery statutes exhaust the universe. In other words, any person who is *not* a "public" official within the meaning of § 14:118 (e.g. an official of Texas, or France, or an Indian Tribe) must be a "private" person within the meaning of § 14:73. Tonry counters that the statutes apply to Louisiana public officials and private persons but

---

1. La.Rev.Stat.Ann. § 14:118 provides:
   Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
   (1) Public officer or public employee; or
   (2) Election official at any general, primary, or special election; or
   (3) Grand or petit juror; or
   (4) Witness, or person about to be called as a witness, upon a trial or other proceeding before any court, board, or officer authorized to hear evidence or to take testimony.
   (5) Any person who has been elected or appointed to public office, whether or not said person has assumed the title or duties of such office.
   The acceptance of, or the offer to accept, directly or indirectly, anything of apparent present or prospective value, under such circumstances, by any of the above named persons, shall also constitute public bribery.
   Whoever commits the crime of public bribery shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both.

2. La.Rev.Stat.Ann. § 14:2(9) (West 1986) provides:
   (9) "Public officer," "public office," "public employee" or "position of public authority" means and applies to any executive, ministerial, administrative, judicial, or legislative officer, office, employee or position of authority

respectively, of the state of Louisiana or any parish, municipality, district, or other political subdivision thereof, or of any agency, board, commission, department or institution of said state, parish, municipality, district, or other political subdivision.

3. La.Rev.Stat.Ann. § 14:73 provides:
   Commercial bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any private agent, employee, or fiduciary, without the knowledge and consent of the principal or employer, with the intent to influence such agent's employee's, or fiduciary's action in relation to the principal's or employer's affairs.
   The agent's, employee's or fiduciary's acceptance of or offer to accept, directly or indirectly, anything of apparent present or prospective value under such circumstances shall also constitute commercial bribery.
   The offender under this article who states the facts, under oath, to the district attorney charged with prosecution of the offense, and who gives evidence tending to convict any other offender under this article, may, in the discretion of the district attorney, be granted full immunity from prosecution for commercial bribery, in respect to the particular offense reported.
   Whoever commits the crime of commercial bribery shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both.

do not extend to non-Louisiana public officials.[4] We must decide whether Burgess was a "private" fiduciary[5] within the meaning of the Commercial Bribery Statute.

## III.

In interpreting the meaning of the statute, we are bound by its plain meaning. The Louisiana Supreme Court has stated, "where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit." *State v. Freeman*, 411 So.2d 1068, 1073 (La.1982); *see United States v. Albertini*, 472 U.S. 675, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985) ("Courts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language."). Criminal statutes are to be strictly construed "and, in the absence of an express legislative intent, any doubt or ambiguity should be resolved in favor of lenity...." *Freeman*, 411 So. 2d at 1072; *see* La.Rev.Stat.Ann. § 14:3 (West 1986).[6] We will first look at the meaning of the word "private" in the context of the Commercial Bribery Statute and then look to other considerations that might aid in our construction.

### A. The Meaning of Private

The word "private" is not defined in the Louisiana Criminal Code. In other sources, "private" is defined as what it is not; it is not public. Webster defines a "private" individual as one "not invested with or engaged in public office or employment." *Webster's Third New International Dictionary*, 1805 (1968). Similarly, Black's de-

fines "private agent" as "[a]n agent acting for an individual in his private affairs; as distinguished from a public agent...." *Black's Law Dictionary* 59 (5th ed. 1979). Louisiana cases, too, have defined the words "private" and "public" by reference to each other, as mutually exclusive and opposite. *Galloway v. Wyatt Metal & Boiler Works*, 189 La. 837, 181 So. 187, 189 (1938) ("Highways are public ways as contradistinguished from private ways."); *Strohmeyer v. Consumers' Electric Co.*, 111 La. 506, 35 So. 723, 724 (1904) ("Such a business may be called 'private' as contradistinguished from a municipal or public duty or function ..."). Therefore, giving the word "private" its plain meaning, Chairman Burgess, the holder of a public office, was not a private fiduciary.

The government argues, however, that the word "private" must be read in context with the Louisiana Public Bribery Statute. As noted above, the Public Bribery Statute limits its definition to Louisiana public officials. The government contends that "public" and "private" exhaust the universe of all people. Therefore, the government concludes, even though Burgess was a public official, he was a "private" fiduciary for the purpose of the Commercial Bribery Statute.

We disagree. "Private" and "public," in their ordinary meaning, are opposite and do, indeed, exhaust the universe of people: a person is either a public official or private actor. However, that does not resolve the issue in the government's favor. Burgess was, indisputably, a public official. But Louisiana limited its definition of "public" officials to Louisiana officials. It did *not*,

---

4. Burgess was acting as an official of the Chitimacha tribe. Since "Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government," *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55–56, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978) (citations omitted), he was acting as a "public" official.

   Other non-Louisiana public officials, besides Indian officials, would be officials of other states, the federal government or any foreign sovereign.

5. It is undisputed that Burgess was acting as a fiduciary for his tribe. Similarly, all of the

other elements of bribery and the Travel Act were satisfied.

6. La.Rev.Stat.Ann. § 14:3 provides for interpretation of the Criminal Code:

   The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.

however, expand the definition of "private" to include everybody that was not a Louisiana public official. In other words, under the plain meaning of the words "public" and "private," Burgess was a public official. The Louisiana legislature specifically excluded non-Louisiana public officials like Burgess from the Public Bribery Statute. That does not make Burgess a "private" fiduciary. All living things are divided into two basic groups: plants and animals. If the legislature defines the word "animal" as limited to mammals, we may not conclude that a fish is a plant. Burgess was not a "private" fiduciary within the plain meaning of Louisiana Commercial Bribery Statute.

## B. Other Considerations

The government argues that the intent of the legislature was to include all bribery of non-Louisiana officials in the commercial bribery statute. They point to the reporter's comments which states: "[t]he crime of commercial bribery in addition to bribery of public officials is commonly agreed to be necessary in the modern criminal law." Reporter's Comment *following* La.Rev. Stat.Ann. § 14:73. They also argue that excluding Burgess from the Commercial Bribery Statute would lead to absurd results. *See State v. Broussard,* 213 La. 338, 34 So.2d 883, 884 (1948) (The rule of strict construction "is not to be applied with such unreasonable technicality as to defeat the purpose of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute.").

We recognize that the reporter's comments has legislative sanction although they are not part of the law. *State v. Daniels,* 236 La. 998, 109 So.2d 896, 898 n. 3 (1959). But that does not help the government. First, as shown above, Burgess was simply not a "private" fiduciary. That plain meaning controls. Second, we are not persuaded that the reporter's comments authoritatively show that all bribery

not covered by the Public Bribery Statute is covered by the Commercial Bribery Statute. The comment simply states that commercial bribery is needed as a supplement to the Public Bribery Statute. It does not say that all other bribery is outlawed. The Commercial Bribery Statute covers a great number of people: all private people who violate its terms in Louisiana. It does not cover non-Louisiana public officials.

Nor do we think that the result we reach is absurd. Louisiana distinguished between bribery of its public officials and commercial bribery: the public bribery statute has a five year, $1000 fine maximum punishment whereas commercial bribery has only a six month, $500 fine maximum punishment. It is obvious that the legislature considered bribery of public officials to be much more serious. Similarly, we can conceive that the legislature considered bribery of non-Louisiana public officials not to be of their concern. In other words, bribery of Louisiana public officials is very serious because it affects their government, commercial bribery is somewhat less serious but it affects the economy of the state, and bribery of non-Louisiana public officials is not outlawed because it does not touch on this government and is the concern of the other sovereign.[7]

When there are two rational interpretations of a statute, one harsher than the other, the court may choose the harsher result only when the legislature has spoken in clear and definite language. *McNally v. United States,* ── U.S. ──, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987). Although we need not resort to the rule because the plain meaning of "private" does not apply to Burgess, we note that the government's argument works a perversion of the rule. In effect, the government would have us find an ambiguity in the word "private" because of the definition of "public." Then the government wants us to take the harsher construction of "pri-

7. We are not saying that this was the rationale of the Louisiana legislature. Indeed, a good argument can be made that bribery of non-Louisiana public officials fell through statutory cracks unintentionally. We are saying, however, that the result is not absurd because there are rational reasons for excluding other sovereign officials from the Louisiana statute.

vate" and apply it to Burgess. That we cannot do.

Finally, we note that construing the word "private" as applying to non-Louisiana public officials raises serious constitutional questions of fair notice. *See McElroy v. United States*, 455 U.S. 642, 658, 102 S.Ct. 1332, 1341, 71 L.Ed.2d 522 (1982) (Narrow reading of statute in order to encourage Congress to speak clearly and "thus giving the populace 'fair warning' of the line between criminal and lawful activity"). We avoid that constitutional issue by our construction. *See Albertini*, 105 S.Ct. at 2902 ("Statutes should be construed to avoid constitutional questions....").

## IV.

█ In sum, we give a plain meaning to the Louisiana Commercial Bribery Statute as commanded by the Louisiana and United States Supreme Courts. Our reading indicates that Chairman Burgess, admittedly acting in his official public capacity, was not a "private" fiduciary. Therefore, Tonry committed no crime under Louisiana law. In so holding, we do not condone Tonry's behavior. The bribing of anyone is certainly ethically and morally repugnant. However, in this case, it was not illegal.

The conviction and sentence are vacated. The district court is directed to enter an order of acquittal.

GARZA, Circuit Judge, dissenting:

A convicted lawyer-defendant in this bribery case has sold a bill of goods to my colleagues of the majority which I refuse to buy.

That the defendant Tonry paid a bribe of $25,000 to Larry Burgess to induce him to sign a contract which gave Tonry and his partners the right to establish and manage the tribe's bingo establishment on its reservation was amply shown. That he and Burgess later traveled to Washington from New Orleans to facilitate the approval of the contract by the Bureau of Indian Affairs is also plain. That Burgess was acting in a fiduciary capacity for the Indian tribe is not in dispute.

I part company with the majority when they hold that the Louisiana Commercial Bribery Statute does not cover Burgess.

The bill of goods that I am talking about is the argument that Tonry makes that the district court erred when it refused to dismiss his indictment and denied his motion for judgment of acquittal because the commercial bribery statute applies only to the bribery of private employees, agents, or fiduciaries. He claims Burgess, the Chairman of the Chitimacha Tribe, a "quasi-sovereign entity", is not a private agent, employee, or fiduciary as required under the commercial bribery statute. According to Tonry, Louisiana law creates a dichotomy between Louisiana public employees and private employees, but a trichotomy, including employees of foreign or non-Louisiana public or sovereign entities, would be necessary to encompass the arrangement he had with Burgess.

Apart from Tonry's distinction, the district court found, and I agree, that the essential elements of commercial bribery are here present. Burgess was bribed in New Orleans while acting in a classic position of trust and confidence to negotiate a commercial contract on behalf of the tribe. The payment to Burgess was made without the tribe's knowledge or consent and was made for no other reason than to persuade, induce, influence, or entice Burgess to enter into a contract with Tonry's corporation contrary to the rules of honesty and integrity. Burgess was unqualifiedly acting as a fiduciary of his tribe. The gist of Tonry's argument, therefore, is that Chairman Burgess might have been bribed in fact but not in law.

In Louisiana, criminal statutes must be interpreted to be in harmony with, preserve, and effectuate the manifest intent of the legislature, and interpretation should be avoided which will defeat the purpose of a statute. *State v. Broussard*, 213 La. 338, 34 So.2d 883, 884 (1948); *see also, State v. Seals*, 255 La. 1005, 233 So.2d 914, 918 (1970). Furthermore, while ordinarily criminal laws should be strictly construed, this rule should not be applied with such unreasonable technicality as to defeat the

purpose of all rules of statutory construction, which is to ascertain the true meaning and intent of the statute. *State v. Payton*, 361 So.2d 866, 870 n. 10 (La.1978).

To interpret the Louisiana commercial bribery statute, we are bound to the statutory principles of interpretation which govern the Louisiana Criminal Code:

> The articles of this Code cannot be extended so as to create crimes not provided herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given genuine construction according to the fair import of their words taken in their usual sense in connection with the context and with reference to the purpose of the provision.

La.Rev.Stat.Ann. § 14:3 (West 1986).

As Tonry concedes, the public and commercial bribery statutes in Louisiana must be construed together. Louisiana law requires that statutes be construed in conjunction with all laws on the same subject matter. *State v. Brady*, 310 So.2d 593, 595 (La.1975). There is no case law discussion of the scope of commercial bribery. I find instructive, however, the Reporter's Comment to the commercial bribery statute, stating that it was promulgaged *"in addition to the bribery of public officials* [because it] is commonly agreed to be necessary in the modern criminal law." (emphasis added). While the comments of the Reporter are not law, they have legislative sanction and they supply evidence of the legislature's intent in drafting a law. *See, e.g., State v. Daniels*, 236 La. 998, 109 So.2d 896, 898 (1959); *State v. Broadnax*, 216 La. 1003, 45 So.2d 604, 610 (1950). Construing the commercial and public bribery laws together, and attempting to implement legislative intent, I find that "private" in the commercial bribery statute is the converse of the "public" activity described by Section 14:118. Any bribery committed in Louisiana that does not involve state government action and otherwise fulfills the criteria of 14:73 would be subsumed in the commercial bribery statute.

Evidence of the legislature's intent to implement a comprehensive set of bribery laws is found also in the "usual sense" of the word "private" in the commercial bribery statute. Webster's defines "private" as "not invested with or engaged in public office." *Webster's Third New International Dictionary* 1805 (1976). Similarly, "private" is defined as "not holding public office or employment." *The Random House Dictionary of the English Language* 1145 (1966). Black's Law Dictionary defines "private" as "[a]ffecting or belonging to private individuals, as distinct from the public generally," and defines "private agent" as "[a]n agent acting for an individual in his private affairs; as distinguished from a public agent." *Black Law Dictionary* 59 and 1076 (5th ed. 1979). The implication is that "private" includes all that is not considered public.

As admitted by the majority, the Louisiana Supreme Court has similarly interpreted "private." *Galloway v. Wyatt Metal & Boiler Works*, 189 La. 837, 181 So. 187, 189 (1938) ("Highways are public ways as contradistinguished from private ways.") *Strohmeyer v. Consumers' Electric Co.*, 111 La. 506, 35 So. 723, 724 (1904) ("Such a business may be called 'private' as contradistinguished from a municipal or public duty or function...."); *State ex rel. Illinois Central Railroad Co. v. Board of Levee Commissioners*, 109 La. 403, 33 So. 385, 399 (1902) ("[a]ll public corporations are municipal corporations, as contradistinguished from private corporations.") In short, the "usual sense" of the word "private" is that which is not public. The terms "public" and "private" are mutually exclusive, and together they exhaust the universe. Therefore, the legislative intent of the commercial bribery statute, as derived from the usual sense of the word "private," was to prohibit all forms of bribery not covered under the public bribery statute.

The majority classifies Burgess as a public official. He is not a public official under any law of Louisiana, but is an official of a tribe within an Indian reservation which has been created under federal law. He was not bribed on the reservation, in which

case we might say that no law of Louisiana had been violated in Louisiana because the laws of Louisiana do not control actions taking place within an Indian reservation. Burgess, however, was bribed in New Orleans. Once he stepped out of the Indian reservation over which he was the chairman, he became like any other private citizen in Louisiana, whether a resident or just in the state to conduct business.

I am convinced that the intent of the Louisiana legislature was to make criminal all forms of bribery in Louisiana. One statute covers the bribing of Louisiana public officials and the commercial bribery statute was intended to cover everyone who was not a Louisiana public official. I, therefore, would conclude that Tonry's proffered interpretation of the commercial bribery statute does not properly account for its relation to Louisiana's public bribery statute, creates a distinction among types of commercial bribery not clearly contemplated by the Louisiana legislature, and conflicts with the legislature's goal to protect Louisiana citizens from commercial bribery.

Applying Tonry's logic to the commercial bribery statute demonstrates its inconsistency with the legislative intent. Not only would the bribery of Burgess be unprosecutable, but also any commercial bribery scheme which involved a principal or employer that is arguably not a private commercial entity. Bribery of an agent of the federal government or of neighboring states' governments or agencies could not be prosecuted under Louisiana law even though the crime occurred there. Bribery of officials of such entities as Pemex, Aramco and other governmentally-owned companies might be defended on the basis that they are quasi-sovereign agencies. More to the point, eliminating such activity from the scope of the Louisiana commercial bribery law does not do justice to the legislature's intent to protect its citizens from a morally and economically offensive practice. In this case, for instance, Tonry represented partners who invested in his bingo management venture while oblivious to his activities, and who lost a substantial portion of their capital because of the bribery

scheme. The Indian tribe, whose members reside in Louisiana, has been delayed in its entrepreneurial venture. Louisiana businessmen who might have competed legitimately with Tonry for the tribe's business were thwarted. It would lead to an absurd result to conclude, despite the obvious harm inflicted upon Louisiana and its citizens by Tonry's bribery, that the legislature intended to exempt this conduct from its commercial bribery statute. Louisiana law requires that a statute should not be interpreted so as to effect absurd consequences. *State v. Booth*, 347 So.2d 241, 243 (La.1977).

I am convinced from reading the two bribery statutes passed by the Louisiana legislature that the intent was, as I have said before, to condemn all bribery and nothing has fallen through the cracks that is exempt from prosecution as the majority now holds.

Since all other points of error included in the appeal by Tonry are without merit, I would affirm his conviction.